UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LUQMAN ABDULLAH a/k/a Terry Douglas, Plaintiff, v. COREY WILSON, et. al., Defendants. | ) ) ) ) ) ) ) ) ) | Civil Action No. 3:10-cv-1076 Judge Trauger/Brown **Jury Demand** |

To:   The Honorable Aleta A. Trauger

## REPORT AND RECOMMENDATION

Currently pending before the Magistrate Judge are competing motions for summary judgment. (Docket Entries 68, 83). For the reasons discussed below, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, Defendants' motion for summary judgment be **GRANTED**, and Plaintiff's claims be **DISMISSED**.

## I. INTRODUCTION

Plaintiff brings this civil rights claim under 42 U.S.C. § 1983, alleging constitutional violations under a number of theories. Plaintiff alleges that Defendants violated the First, Fourth, Eighth and Fourteenth Amendments when the defendant officers searched Plaintiff's vehicle and seized the money therein. Plaintiff alleges that the defendants performed the search without probable cause as retaliation for refusing to inform on his colleagues. Plaintiff also alleges that the defendants searched with a racial profiling motive. Plaintiff seeks a return of the seized money, the return of a firearm, and damages.

1

## II.  PROCEDURAL POSTURE

Plaintiff Luqman Abdullah (also known as Terry Douglas) filed this *pro se* action in the Middle District of Tennessee on November 15, 2010.  (Docket Entry 1).  The initial defendants were the Metropolitan Police Department and officers Corey Wilson and Matthew Dixon.  (Docket Entry 1).  The claims against the Metropolitan Police Department were dismissed with prejudice on March 16, 2011.  (Docket Entry 26).  On March 2nd, Defendants filed a motion for summary judgment.  (Docket Entry 68).  While this motion was pending, Plaintiff filed a competing motion for summary judgment.  (Docket Entry 83).  Plaintiff has since stated in a memorandum that he no longer seeks the return of the property seized.  (Docket Entry 101).

## III.  FACTS

Defendant has filed a statement of undisputed facts, to which Plaintiff has filed a formal response, disputing many of the Defendant's stated facts.  (Docket Entries 70, 100).

A. <u>Undisputed Facts</u>

Plaintiff is a "pickup person" for a "numbers" illegal gambling operation.  (Docket Entries 70, 100).  On August 7, 2010, Plaintiff performed pickups for the numbers operation, first by riding in a taxi, then by driving his gray Nissan pickup truck.  Plaintiff placed bundles of money and numbers tickets in the sleeves of a "big coat" he wore.  Around the time Plaintiff picked up a "package" at a Jefferson Street address, Plaintiff noticed a suspicious vehicle.

Later that night, Officers Dixon and Wilson pulled behind Plaintiff's vehicle and engaged blue lights after Plaintiff pulled over into the hazard lane. (Docket Entry 73, p. 3).  Defendants believed, correctly, that Plaintiff was headed to a numbers operations house.  (Docket Entries 77,

2

100, 101).[1] The officers were driving the same suspicious vehicle that Plaintiff had noticed earlier. Officer Dixon asked Plaintiff to step out of the truck, and Plaintiff complied. (Docket Entries 70, 100). In the vehicle, Officer Dixon found two bags with money from a numbers operation. The officers had caught Plaintiff with money from illegal gambling before. (Docket Entry 73, p. 22). At the conclusion of the stop, Plaintiff signed a citation for possession of a gambling device and drove away without being arrested. (Docket Entries 70, 100).

After Davidson County indicted Plaintiff on gambling charges, Plaintiff forfeited all money seized by Defendants. *Id.* Plaintiff has not filed any state action to recover the seized property.

B. Contested Facts According to Defendants

Prior to the search, Officers Dixon and Wilson were conducting surveillance on Plaintiff, who was in an area known for illegal gambling activity. (Docket Entry 77). The officers witnessed Plaintiff receiving an envelope from a person in a white van, who was known to be a "numbers taker." Believing Plaintiff was heading to a numbers house, the officers followed Plaintiff onto interstate 440 and engaged blue lights behind Plaintiff after Plaintiff swerved his vehicle from the outside lane of traffic and pulled to a stop in the hazard lane. After approaching the passenger window, Officer Dixon saw packages of envelopes in the sleeves of a jacket in plain view. Dixon then entered the vehicle and carried the packages back to the service vehicle in two trips.

---

[1] Plaintiff does not explain how Defendants learned Plaintiff was going to a numbers house, if not by surveillance.

C.  Contested Facts According to Plaintiff

Defendants were "no where even close to the parking lot." (Docket Entry 101). In an unsworn reply, Plaintiff states that there was no white van and disputes the manner in which Plaintiff left the parking lot, but does not dispute Defendants' assertion of an exchange occurring in that parking lot. Defendants were waiting for Plaintiff to get on the expressway while Plaintiff was in the parking lot. (Docket Entry 100). Plaintiff did not swerve on the expressway, but did pull to a stop in the hazard lane. (Docket Entry 73, p. 3). Defendants knew that Plaintiff was going to a numbers house where they had previously served warrants. (Docket Entries 100, 101). Plaintiff alleges that knowing Plaintiff was going to the numbers house, Defendants pulled him over before arriving at the house so they could take some numbers money. (Docket Entry 85).

In regards to the search of the truck, Plaintiff asserts that Officer Dixon did not see any packages in plain view. According to Plaintiff, after Plaintiff exited the truck, Dixon asked him whether he would tell him where the packages were, or whether he would have to search for them.[2] (Docket Entries 1, 100). Plaintiff then informed Dixon that there was no probable cause to search, but Dixon searched twice anyway before finding packages. (Docket Entries 1, 101).

Plaintiff also alleges that the search was in retaliation for not cooperating with a previous investigation. (Docket Entry 1). Plaintiff alleges that Wilson had declared he would stop Plaintiff for nothing if Plaintiff did not cooperate.

Plaintiff's factual allegations are contradictory at many points. In testimony, Plaintiff

---

[2]Plaintiff's complaint and later response differ on the language of Officer Dixon's alleged ultimatum. In support of the assertion that Dixon did not see anything in plain view, Plaintiff provides a picture of his truck from the passenger side.

4

states that he first noticed the "suspicious vehicle" after picking up a package on Jefferson Street. (Docket Entry 73, p. 18). However, Plaintiff's response to Defendants' "Separate Statement of Facts" states that Plaintiff noticed the suspicious vehicle before entering the Jefferson Street address to pick up the package. (Docket Entry 100). Plaintiff also contradicts himself as to whether the package he picked up at the Jefferson Street address contained plastic bags or envelopes. (Docket Entries 73, 100). Plaintiff also disputes that Defendants surveilled Plaintiff that day (Docket Entry 100), though he stated that the suspicious vehicle he noticed outside the Jefferson address was the same vehicle that later pulled him over (Docket Entry 73).

## IV. LEGAL DISCUSSION

A. <u>Standard of Review</u>

Summary judgment is appropriate if there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When deciding a motion for summary judgment, the court must review the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In order to survive summary judgment, the non-moving party

5

"must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. In other words, the nonmovant must produce supporting factual evidence that is not "so conclusively contradicted by the record that no reasonable jury could believe it." *Chappell v. Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009). In reviewing a summary judgment motion, credibility assessments and weighing of the evidence are prohibited. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011).

In resolving a Rule 56 motion, the Court should not consider unsworn statements or uncertified documents. *Dole v. Elliott Travel & Tours, Inc.* 942 F.2d 962, 968 (6th Cir. 1991). Conclusory arguments unsupported by the facts on the record are not enough to create a genuine dispute of material fact. *Smith v. County of Hamilton*, 34 Fed. Appx. 450, 455 (6th Cir. 2002). For *pro se* litigants, a pleading signed under penalty of perjury is sufficient to qualify as an affidavit for the purposes of summary judgment. *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

When parties file cross-motions for summary judgment, a court must evaluate each party's motions on their own merits, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Profit Pet v. Arthur Dogswell, LLC*, 603 F.3d 308, 312 (6th Cir. 2010).

   B.   <u>Section 1983</u>

In order to prevail on a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must

6

establish that a person acting under color of state law deprived him of a right secured by the Constitution of the United States. *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). When suing a law enforcement officer, a plaintiff must also overcome the defense of qualified immunity, which shields government officials from civil liability unless they violate a clearly established constitutional or statutory right of which a reasonable person would have known. *Id.*

In determining whether an officer is shielded by qualified immunity, the Court uses a two-step analysis to determine: (1) when considering the allegations in a light most favorable to the injured, whether a constitutional right has been violated, and (2) whether that right was clearly established. *Id.*

A right is "clearly established" when the contours of the right are sufficiently clear, even if the specific action in question has never been held unlawful. *Id.* The relevant inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the specific situation he confronted. Law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). The action's unlawfulness can be apparent from direct holdings, specific examples mentioned as prohibited, or from the general reasoning that the court employs. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cr. 2003). The Court first looks to Supreme Court decisions, then to decisions of the Sixth Circuit and district courts within the circuit, then lastly to decisions in other circuits. *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994).

Once a defendant raises the qualified immunity defense, the burden is on the plaintiff to show that the defendant is not entitled to qualified immunity. *Smoak*, 460 F.3d at 777. This includes the burden of showing that the claimed right has been clearly established. *Everson v.*

7

*Leis*, 556 F.3d 484, 494 (6th Cir. 2009).

C.     The Fourth Amendment

**1.     Vehicle Stops**

When officers have reasonable suspicion that occupants of a vehicle have engaged in, are engaging in, or are about engage in criminal activity, they may briefly stop the vehicle to investigate. *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 769 (6th Cir. 2004). If there is sufficient reasonable suspicion to stop a vehicle, whether or not the stop is pretextual is irrelevant. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). The question of whether there is sufficient reasonable suspicion is a mixed question of law and fact. *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008).

Reasonable suspicion is a less strict standard than probable cause. *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994). For the purposes of determining whether reasonable suspicion exists, the Court must look at the totality of the circumstances to determine whether the officer stopping the vehicle had a particularized and objective basis for suspecting legal wrongdoing. *United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005). "[T]he question is not whether there is an innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot."

In *United States v. Blair*, an officer stopped a vehicle based on a belief that the driver possessed narcotics. *Blair,* 524 F.3d at 750. The district court found that a reasonable suspicion existed based on the late hour, the high-crime nature of the area, and the officer's knowledge that the vehicle just left a known drug house. The Circuit Court overturned based on a finding that at

8

the time of the stop, the officer did not know the vehicle had just left a drug house. The Circuit Court indicated that had the officer known at the time of the stop, the officer would have had reasonable suspicion.

**2.      Vehicle Searches**

A warrantless search of a car is valid so long as the search is based on probable cause. *United States v. Cope*, 312 F.3d 757, 775 (6th Cir. 2002). Probable cause to search a vehicle exists when there is a "fair probability" that contraband or evidence of a crime will be found in the vehicle. *Id.* Probable cause is a commonsense, practical question to be judged on the totality of the circumstances. *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998). In assessing probable cause, the Court may only look at the objective facts known to the officers at the time of the search. *Id.*

Probable cause requires some objective indication that evidence will be in the car itself. *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002). In *Haynes*, officers searched the car of a man arrested in a nearby apartment. The man was suspected of stealing numerous firearms and pieces of jewelry. The Court held that there was no probable cause to search the car. The officers had received no information that would indicate the items were in the car, and the man was not near the vehicle when they arrested him.

Police may also perform a warrantless searches and seizures if they see incriminating evidence in plain view. *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998). To satisfy the "plain view" exception to the warrant requirement, four conditions must be present: (1) the item must be in plain view, (2) the item's incriminating nature must be readily apparent, (3) the item must be viewed by an officer lawfully located in a place from which the object can be seen,

and (4) the item must be seized by an officer who has lawful right of access to the object itself. *Id.*

In determining whether the item's incriminating nature is readily apparent, the Court looks at three instructive factors: (1) whether there is a nexus between the seized object and suspected criminal activity, (2) whether the intrinsic nature or appearance of the object gives probable cause to believe that it is associated with criminal activity, and (3) whether the officers can, at the time of discovery of the object, on the facts then available, then determine the probable cause of the object's incriminating nature. *United States v. Chandler*, 437 Fed. Appx. 420, 427 (6th Cir. 2011). In *Chandler*, the Court found that a plain-view discovery of a large amount of cash had an immediately apparent incriminating nature, as the officers had reasonable suspicion that the searched person had recently participated in an illegal drug transaction. *Id.*

D. Due Process

To establish a procedural due process claim pursuant to § 1983, a plaintiff must establish three elements: (1) that they have a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment of the Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of the interest. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). "The plaintiff must plead and prove that state remedies for addressing the wrong are inadequate." For a state remedy to be inadequate, the state needs to either have no available remedy, an inadequate remedy, or an adequate remedy that was misapplied.

E. Eighth Amendment

10

Only convicted prisoners fall under Eighth Amendment protection. *Graham v. Connor*, 490 U.S. 386, 392 (1989).

F. Equal Protection Clause

To state a selective prosecution claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that a state official acted with a discriminatory purpose, and created a discriminatory effect. *Haraji v. Huron Twp.*, 365 F.3d 501, 508 (6th Cir. 2004). The claim requires three elements: First, an official singles out a single constitutionally-protected group or group performing a constitutionally protected act. Second, the official must initiate prosecution with a discriminatory purpose. Lastly, the prosecution must have a discriminatory effect on the group the plaintiff belongs to. To prove the first element, it is an absolute requirement that a plaintiff show that similarly situated persons outside of the group were not prosecuted. *Id.*

G. Retaliation

There are three essential elements of a § 1983 retaliation claim: (1) the plaintiff engaged in protected conduct, (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Dean v. Byerley*, 354 F.3d 540, 551 (6th Cir. 2004).

The Court uses a burden-shifting framework to analyze motivation. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). Once the plaintiff has met the burden to show that plaintiff's protected conduct motivated the actions of the defendant, the defendant then can show that he would have taken the same action in the absence of the protected conduct. Simple

11

allegations of retaliation alone are not enough to create a genuine issue of fact at the summary judgment stage. *Id.* at 400. However, because direct evidence of a defendant's intent is rare, the issue of motivation should rarely be decided on summary judgment. *Block v. Ribar*, 156 F.3d 673, 682 (6th Cir. 1998).

The requirement that the action could chill a person of ordinary firmness is meant to weed out *de minimis* adverse actions. *Thaddeus-X*, 175 F.3d at 398. Even *de minimis* actions can chill a person of ordinary firmness if part of a campaign of harassment. *Id.* The question of whether a person of ordinary firmness could be chilled by the action is a question of fact, not dismissible as a matter of law. *Id.*

What constitutes protected conduct can depend on the context. *Id.* at 394. In general, the First Amendment right to freedom of speech includes a freedom of silence. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796-97 (1988). On the other hand, the Seventh Circuit has indicated that silence cannot be the basis of a retaliation claim. *Wernsing v. Thompson*, 423 F.3d 732, 753 (7th Cir. 2005). Similarly, in *Brown v. Michigan Parole Board*, the district court found no precedent indicating that silence was protected conduct in the context of a parole hearing, dismissing a retaliation claim. *Brown v. Mich. Parole Bd.*, 2009 U.S. Dist. LEXIS 24140, at *6 (W.D. Mich. N. Div., Mar. 25, 2009).

## V.  ANALYSIS

A.  <u>Defendants' Motion for Summary Judgment</u>

Defendants make several arguments addressing each of Plaintiff's claims listed in the pleading. Defendants argue based on facts that were uncontested at the time of filing, but

12

Plaintiff has since contested with proper affidavits (Docket Entries 84 and 101). Resolving the contested facts in favor of Plaintiff and viewing all facts in the light that most favors Plaintiff, Plaintiff has not presented a genuine issue of material fact as to why Defendants are not entitled to qualified immunity on any of the claims. Thus, Magistrate Judge hereby recommends Defendants' motion be granted.

**1.     The Vehicle Stop**

Defendants argue that the stop constituted a valid investigatory stop. While Defendants depended on facts that are later contested, Plaintiff's version of the facts still presents what is most likely a valid investigatory stop. Even if the stop was invalid, the invalidity of that stop was not sufficiently clearly established to overcome qualified immunity.

Viewing the facts in the best possible light for the Plaintiff, Defendants stopped Plaintiff after Plaintiff pulled over on the side of the 440 expressway. Defendants had not seen any indications of numbers-related activity earlier, but knew that Plaintiff was driving to the numbers house.

Given this situation, Defendants would have had sufficient reasonable suspicion for a valid investigatory stop. The officers knew that Plaintiff had participated in illegal gambling before, and knew that he was on his way to a numbers house. It would not have been unreasonable to suspect that Plaintiff was participating in an illegal gambling scheme at that moment. Plaintiff stopping on the side of a freeway certainly could have contributed to a reasonable suspicion as well.

Even if this did not constitute a reasonable suspicion, Plaintiff has failed to show that the law regarding this kind of stop is clearly established in his favor. Plaintiff has not put forth any

cases, in this circuit or otherwise, suggesting that the stop was invalid. The Magistrate Judge similarly could not locate any cases suggesting this could not constitute reasonable suspicion. Thus, Defendants are immune from a claim based on the investigatory stop.

**2.     The Car Search**

Defendants argue that the search was valid based on the previously uncontested fact that Defendants viewed the packages in plain view. Plaintiff has since properly contested this fact. Assuming that Defendants did not see the packages in plain view, Defendants may have lacked probable cause to search the car. However, Plaintiff still failed to show that the invalidity of the search was clearly established in that situation. Thus, defendants are entitled to qualified immunity on those claims.

Unlike the officers in *Haynes*, Defendants had every indication that if Plaintiff was participating in illegal gambling at the time, they would find evidence in the car. Plaintiff was driving the car at the time. If Plaintiff was taking numbers packages to the house, the packages would have to be in the car. Defendants had also caught Plaintiff with illegal gambling money in a car before. Given that Defendants knew Plaintiff was driving to a numbers house, it was likely a "fair probability" that evidence of gambling would be in the car.

Again, even if Defendants lacked probable cause, Plaintiff has failed to show that the law is clearly established to that effect. It is the Plaintiff's burden to show that Defedants are not entitled to qualified immunity. Like with the investigatory stops, Plaintiff has not provided any cases to show that the law is clear in regards to this situation. The Court's own research has similarly produced no cases speaking clearly to this situation. As such, Defendants are immune from this claim.

### 3. The Seized Money

Defendants argue that Plaintiff waived his claims to the seized money in exchange for dismissal of the gambling charges against him. (Docket Entry 68, Ex. 1). Plaintiff has largely abandoned his claim to the money (Docket Entry 101), and only mentioned due process in the testimony. Plaintiff presents no real opposition to the defense that he waived his claim to the money in exchange for the dismissal. Further, Plaintiff has made no attempt to show that state remedies are inadequate, let alone that Defendants violated a clearly established constitutional right. Thus, Plaintiff cannot recover the money on a claim against Defendants.

### 4. Eighth Amendment

Plaintiff makes no argument on a claim based on Eighth Amendment protections. Given that Plaintiff was never arrested, let alone convicted during the exchange between Plaintiffs and Defendants, the Eighth Amendment does not apply to this case.

### 5. Equal Protection

In support of his claim of racial profiling, Plaintiff states that Defendants had searched Plaintiff many times and not found anything. (Docket Entry 84). Plaintiff also notes that Plaintiff is black, while Officer Dixon is white. Defendants argue that Plaintiff's claim fails because Plaintiff failed to show similarly situated persons outside of his category were treated differently. (Docket Entry 71). Plaintiff has failed to demonstrate that a similarly situated person outside of his category was treated differently than Plaintiff. Plaintiff has also failed to even allege that either of the defendants acted with a discriminatory purpose. Thus, Plaintiff cannot recover on a racial profiling theory.

### 6. Retaliation

15

Plaintiff argues that Defendants retaliated for Plaintiff's lack of cooperation with an investigation by "stopping Plaintiff for nothing" every time they saw Plaintiff. (Docket Entry 1). Defendants argue that Plaintiff's claim should fail because Plaintiff's conduct was not constitutionally protected, and Plaintiff did not overcome qualified immunity. In the light most favorable to Plaintiff, Wilson did tell Plaintiff they would stop him as retaliation for not talking, and this was a cause of the Officer's decision to search. However, Plaintiff failed to show that silence is clearly established as protected conduct in the context of retaliation claims. Plaintiff also failed to show that silence in the context of a police investigation has been clearly established as protected conduct. As such, Defendants are entitled to qualified immunity on the claim.

An officer could have reasonably mistaken whether his actions were unlawful here in two ways. First, a reasonable officer could believe that retaliation claims are meant to prevent silencing speech, and thus such claims would not apply to silence. Second, a reasonable officer could also believe that silence in the context of failing to cooperate with a police investigation is not protected against retaliation. Allowing retaliation claims for silence in that context could hamper police investigations of repeat suspects.

Plaintiff has not shown that the law is clearly established, and the Magistrate Judge has found no controlling cases that speak clearly to the issue. Thus, the retaliation claim fails.

B.     <u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff argues that Defendants' search was retaliatory, racially biased and without probable cause. (Docket Entries 84, 85). In support of this motion, Plaintiff disputes the facts alleged in Dixon's declaration and submits a picture of Plaintiff's truck as evidence that

16

Defendants could not have seen the numbers packages in plain view. In support of the retaliation claim, Plaintiff has submitted no evidence beyond the initial pleading, which alleges that Wilson stated he would retaliate against Plaintiff by "stopping Plaintiff for nothing" if Plaintiff refused to inform on his gambling operation.[3] (Docket Entry 1).

In a light most favorable to Defendants, Plaintiff certainly has not shown that there is no genuine dispute of material fact as to any of his claims. Plaintiff has also failed to show how Plaintiff is entitled to judgment as a matter of law. As previously discussed, even when viewing facts favorably to the Plaintiff, all claims fail. Thus, Magistrate Judge recommends that Plaintiff's motion be denied.

## VI. CONCLUSION

For the reasons stated above, the undersigned hereby **RECOMMENDS** Plaintiff's motion be **DENIED**, Defendants' motion be **GRANTED** and Plaintiff's claims be **DISMISSED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver

---

[3] According to Defendants' brief, Plaintiff made further statements regarding this incident in his deposition. Unfortunately, that segment of the deposition was never submitted into the record.

of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 7th day of August, 2012.

/S/ Joe B. Brown

Joe B. Brown
United States Magistrate Judge