IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Luqman Abdulla,** a/k/a **Terry Douglas,** **Plaintiff,** | ) ) ) ) |
| vs. | ) Civil Action. No. 3:10-cv-1076 ) **Judge Trauger/Magistrate Judge Brown** |
| **Corey Wilson and** **Matt Dixon** **Defendants,** | ) ) ) ) |

**To: The Honorable Aleta Trauger District Judge**

### Report and Recommendation

Presently pending before the Magistrate Judge is Defendants', Corey Wilson and Matt Dixon, Motion for Summary Judgment. For the reasons explained below, the undersigned **RECOMMENDS** that the Defendants' motion for Summary Judgment be **GRANTED**.

### I. PROCEDURAL HISTORY

On November 15, 2010, Plaintiff, Luqman Abdullah also known as Terry Douglas, brought this action against Defendants, and the Metro Nashville Police Department, under 42 U.S.C. § 1983 alleging that Defendants had violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution when they performed a search of his automobile and seized money and "tickets" used in the conduct of an illegal gambling enterprise. (Docket Entry ("DE") 1.) According to Plaintiff, Defendants' search of his vehicle was the product of racial profiling and retaliation rather than probable cause. (DE 1.)

By Order dated November 17, 2010, the District Judge referred this cause to the undersigned "for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. § 636(b) and to conduct any necessary proceedings under Rule 72, Fed. R. Civ. P." (DE 2.) On January 24, 2011, the

undersigned issued a Report and Recommendation that the Metro Nashville Police Department be dismissed from the suit due to Plaintiff's failure to state a claim. (DE 19.) The District Judge accepted this recommendation and dismissed Metro Nashville from the suit. (DE 26.)

On March 2, 2012, Defendants moved for Summary Judgment as to all of Plaintiff's claims. (DE 68.) Plaintiff filed his response on March 13, 2012 (DE 83) and moved for Summary Judgment in his own right on April 2, 2012. (DE 83.) Defendants responded to Plaintiff's Motion for Summary Judgment on May 4, 2012. (DE 91.)

On August 7, 2012, the undersigned issued a Report and Recommendation on these competing motions for Summary Judgment, recommending that Defendants' motion be granted and Plaintiff's motion be denied. (DE 106, p. 17.) Relevant here are the findings in regard to the search of Plaintiff's vehicle.

As a basis for their search, Defendants relied on the plain view exception to the warrant requirement. (DE 106, p. 14.) However, noting that Plaintiff had "properly contested this fact," the undersigned concluded that Defendants' familiarity with Plaintiff as a number runner and their knowledge that "Plaintiff was driving to a numbers house" gave rise to a "'fair probability' that evidence of gambling would be in the car. (DE 106, p. 14.) Notwithstanding probable cause, the undersigned found that Plaintiff had failed to establish that Defendants were not entitled to qualified immunity. (DE 106, p. 14.)

Plaintiff objected to the grant of Summary Judgment, claiming that the facts surrounding the search of his vehicle were in dispute and an issue remained for trial. (Plaintiff's Supplemental Objections, DE 121, p. 1 ¶ 2.) The District Judge accepted the Report and Recommendation except as to the search of Plaintiff's vehicle. (DE 120.) According to the Order dated September 26, 2012, the District Judge found that the contest over whether the

packages containing illegal gambling tickets and proceeds were in plain view "create[ed] a genuine issue of fact that forecloses a ruling in the defendants' favor on the validity of the search of the plaintiff's car."  (DE 120, p. 2.)  As such, the District Judge sustained Plaintiff's objections.  (DE 120, p. 2.)  Defendants took an interlocutory appeal of the District Judge's denial.  (DE 126.)

On appeal, Defendants argued "that the search of Abdullah's vehicle was a constitutionally valid search based upon probable cause even without the disputed 'plain view' evidence."  (Appellate Court Order, DE 131, p. 3.)  Finding that the "magistrate judge's report focused solely on the 'plain view evidence' in recommending that the defendants were entitled to qualified immunity," the United States Court of Appeals for the Sixth Circuit vacated the District Judge's order and remanded the case "to the district court to analyze defendants' request for qualified immunity despite the disputed evidence."  (Appellate Court Order, DE 131, pp. 3-4.) By Order dated June 25, 2013, the District Judge referred this case back to the undersigned to undertake this endeavor.  (DE 133.)

This case is properly before the court.

## II. <u>ANALYSIS</u>

### A. Legal Framework

"The Fourth Amendment forbids law enforcement officers from making unreasonable searches and seizures, and its protections extend to brief investigatory stops of vehicles that fall short of traditional arrest."  *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  To affect a traffic stop, police officers need only have "reasonable suspicion of criminal activity."  *Lyons*, 687 F.3d at 763 (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n.6 (6th Cir. 2004)).  A reasonable suspicion is

found where, considering the totality of circumstances, police officials "possess a particularized and objective basis for suspecting the particular person [being detained] of criminal activity based upon specific and articulable facts." *Lyons*, 687 F.3d at 763 (quoting *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008)). In contrast, to conduct a warrantless search, Police officers must supplement their reasonable suspicions with objective facts suggesting a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

**B. Finding of Fact**

The undisputed facts at the time the Court of Appeals rendered its opinion were stated in the Magistrate Judge's Report and Recommendation as:

> Plaintiff is a "pickup person" for a "numbers" illegal gambling operation. (DE 70, 100.) On August 7, 2010, Plaintiff performed pickups for the numbers operation, first by riding in a taxi, then by driving his gray Nissan pickup truck. Plaintiff placed bundles of money and numbers tickets in the sleeves of a "big coat" he wore. Around the time Plaintiff picked up a "package" at a Jefferson Street address, Plaintiff noticed a suspicious vehicle.
>
> Later that night, Officers Dixon and Wilson pulled behind Plaintiff's vehicle and engaged blue lights after Plaintiff pulled over into the hazard lane. (DE 73, p. 3.) Defendants believed, correctly, that Plaintiff was headed to a numbers operations house. (DE 77, 100, 101.) The officers were driving the same suspicious vehicle that Plaintiff had noticed earlier. Officer Dixon asked Plaintiff to step out of the truck, and Plaintiff complied. (DE 70, 100.) In the vehicle, Officer Dixon found two bags with money from a numbers operation. The officers had caught Plaintiff with money from illegal gambling before. (DE 73, p. 22.) At the conclusion of the stop, Plaintiff signed a citation for possession of a gambling device and drove away without being arrested. (DE 70, 100.)

(Report and Recommendation, DE 106, pp. 2-3.)

Subsequent to remand, the undersigned ordered an evidentiary hearing to flesh out the details of what occurred on the night of August 7, 2010. (DE 153.) Defendants introduced a pictures and map pages as exhibits for reference, which establish that 2622 Jefferson ("2622") is a commercial building with four different rental spaces. (Exhibit 4-9; Transcript of Evidentiary

Hearing ("Transcript"), DE 163, p. 158 ¶¶ 18-24.) The retail spaces face east, the building is bordered by Jefferson Street on the South, and by Beasley Street on the North. (Exhibit 4-5.) The parking lot is located adjacent to the building on the east and connects Beasley Street with Jefferson Street. (Exhibit 4-3.) The driveway is located in the center of the parking lot with spaces on both the east and west halves. (Exhibit 4-3, 5.) 2622's parking lot is bordered to the east by what appears to be a vacant gravel parking lot. To the east of the vacant lot is another paved parking area that also connects Jefferson Street with Beasley Street. (Exhibit 4-7, 8, 10.)

Several commercial buildings are located directly across Jefferson Street from 2622. These establishments are offset to the east and west of 2622 due to the intersection of 27th Avenue and Jefferson Street, which occurs directly adjacent to 2622's south face. (Exhibit 5.) Only one building, 2701 Jefferson Street, is located to the west of 27th Avenue, but as many as four retail spaces are located to the east. (Exhibit 4-1, 2.) An alley, running parallel to Jefferson Street, is located one block south directly behind the four retail spaces on the east side of 27th Avenue. (Exhibit 5.) This alley extends eastward from 27th Avenue for a distance of approximately 250 feet. (Exhibit 5.)

During the hearing, Plaintiff confirmed that he is a numbers runner involved in collecting and transporting gambling "tickets" and money from various collection points in the Metro Nashville Area to the central "bank" (Transcript, DE 163, p. 19 ¶¶ 2-13.), and that he has an extensive history of interactions with Defendants prior to August 7, 2010. (Transcript, DE 163, pp. 13-18, 72 ¶¶ 8-22, 123 ¶¶ 12-25.) On August 7, 2010, Plaintiff arrived at 2622 Jefferson approximately one hour before he was to deliver the "tickets" he was picking up to the central bank—somewhere between 8:00 and 8:30 pm. (Transcript, DE 163, p. 43, ¶¶ 14-19.) Plaintiff parked "across the street from 2622" and walked across the street to one of the establishments.

(Transcript, DE 163, p. 28 ¶¶ 3-5.) Once inside, Plaintiff received a package containing slips of paper with numbers on them and cash, which he placed inside the sleeve of a "bulky . . . kind of heavy jacket" that he wore.[1] (Transcript, DE 163, pp. 21 ¶¶ 9-11, 19-25; 22 ¶¶ 16-18.) Plaintiff observed a suspicious truck as he entered the establishment and again when he exited approximately 15 minutes later. (Transcript, DE 163, pp. 26 ¶¶ 1-8.)

According to Plaintiff's deposition testimony, Plaintiff saw a suspicious truck sitting "over on the next street."[2] (Transcript, DE 163, p. 32 ¶¶ 5-7.) Not knowing whether the two individuals in the truck were police officers or criminals planning to rob him, Plaintiff employed one tactic that he commonly used while transporting "packages" to see if he were going to be arrested or robbed. (Transcript, DE 163, pp. 28 ¶¶ 8-25, 32 ¶¶ 7-10.) After returning to his truck, Plaintiff pulled from the parking lot of 2622 onto Beasley Street and proceeded to the parking lot of a nearby church. (Transcript, DE 163, p. 28 ¶¶ 11-19.) Once in the church parking lot, Plaintiff "went around the corner and came back." (Testimony, DE 163, p. 32 8-13.) Once he got back into the lot, Plaintiff noticed that the suspicious vehicle had "pulled over on the Jefferson Street side." (Transcript, DE 163, p. 32 ¶¶ 14-17.) Plaintiff waited somewhere between two and six minutes before leaving the parking lot. (Transcript, DE 163, p. 28 ¶¶ 18-

---

[1] Plaintiff testified that it was cold on August 7, 2010, somewhere in the 60s. (Transcript, DE 163, pp. 22 ¶ 19-20; 60 ¶¶ 3-7.) However, information from the National Oceanographic and Atmospheric Administration, which the Magistrate Judge took judicial notice of (Transcript, DE 163, p. 61 ¶¶ 6-9), reveal that the temperature between 8:00 and 9:00 pm was 79 or 80 degrees. (Exhibit 3; Transcript, DE 163, p. 60 ¶¶ 11-22.)

[2] Plaintiff's testimony at the evidentiary hearing conflicts with his prior deposition testimony. Despite testifying at his deposition that he "got a good look at [the suspicious vehicle]" on August 7, 2010, maintained visual contact with the suspicious vehicle from the time he left 2622 Jackson Street until he was pulled over, and that the vehicle that Defendants were driving when they stopped him was the same suspicious vehicle he observed earlier near 2622, Plaintiff testified at the evidentiary hearing that the vehicle he observed on August 7, 2010, was not the same vehicle. (Transcript, DE 163, pp. 33 ¶¶ 9-14, 36 ¶¶ 16-25.) The facts found by the Magistrate Judge are those set out in Plaintiff's deposition testimony because, once a motion for summary judgment is being considered, a litigant cannot change deposition testimony to create a factual dispute where one did not exist previously without good cause. *See E.g. Penny v. United Parcel Serv.*, 128 F.3d 408, 416 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). Plaintiff's stated cause, that he is a diabetic, hadn't eaten the morning of the deposition, and was under a great deal of pressure is not credible or sufficient to warrant such an extreme about face in his sworn testimony. (Transcript, DE 163, p. 62 ¶¶ 8-19.)

19.)

Plaintiff was unsure whether the two individuals he observed in the vehicle were "robbers or police. But [he] knew something was wrong." (Transcript, DE 163, pp. 32 ¶¶ 21-23, 37 ¶¶ 11-13.) Yet, he pulled out onto Jefferson Street heading west to the interstate on-ramp. (Transcript, DE 163, pp. 33 ¶¶ 12-14, 36 ¶¶ 11-15.) According to Plaintiff's deposition testimony, the vehicle that the officers were driving when they stopped Plaintiff was the same vehicle that he had observed during his pick-up. (Transcript, DE 136, p. 36 ¶¶ 16-25.) When asked how he could be sure, Plaintiff responded that he "got a good look at it" and never lost sight of it from the time he left the area of 2622 except for a brief moment when he drove through the church parking lot. (Transcript, DE 163, pp. 35 ¶¶ 9-12, 36 ¶¶ 16-25.)

According to defendant Dixon ("Dixon"), the officer who was driving the night of August 7, 2010 and who executed the search of Plaintiff's truck, and defendant Wilson, they were well acquainted with 2622's use as a collection site for illegal gambling activity. (Transcript, DE 163, pp. 71 ¶¶ 14-16, 122 ¶¶ 1-3.) Both had executed multiple search warrants at that location (Transcript, DE 163, p. 71 ¶¶16-17, 94 ¶¶ 10-17), observed numerous runners dropping off, picking up or exchanging packages at that location (Transcript, DE 163, p. 71 ¶¶ 17-20), had conducted multiple controlled buys from that location (Transcript, DE 163, p. 122 ¶¶ 4-9), and surveilled it routinely (Transcript, DE 163, p. 122 ¶¶ 24-26); usually near the time that the illegal numbers must be picked up and returned to the central bank—either noon or between 8:30 and 9:00 in the evening. (Transcript, DE 163, p. 122 ¶¶ 17-23.)

On the night in question here, Dixon and Wilson began their surveillance activities at approximately 7:00 pm; initially setting up in an alley located one half block south of Jefferson. (Transcript, DE 163, pp. 71 ¶¶ 7-9, 125 ¶¶ 22-23.) This location afforded a clear enough view of

2622 that Dixon was able to observe plaintiff entering a hair salon, retail space 4, on the north end of the building sometime between 8:00 and 8:30. (Transcript, DE 163, pp. 126 ¶¶ 20-25, 127 ¶¶ 1-2.) At that time, Plaintiff was wearing a jacket but carried nothing in his hands. (Transcript, DE 163, p. 73 ¶¶ 23-24; p. 109 ¶¶ 19, 13-17; p. 128 ¶¶ 24-25.)

Due to the number of people standing outside of an adjacent bar, Defendants relocated to the parking lot of 2701 Jefferson Street, which is adjacent to Jefferson Street. (Transcript, DE 163, pp. 126 ¶¶ 20-25, 127 ¶ 102.) However, their new location prevented Defendants from viewing the entrances to any of the retail spaces in 2622. (Transcript, DE 163, pp. 126 ¶¶ 20-25, 127 ¶ 102.) Wilson testified that he saw Plaintiff approach the building and leave the building, but could not see Plaintiff actually enter the building from that location. (Transcript, DE 163, pp. 110- 113.) (Transcript, DE 163, p. 109 ¶¶ 13-19.) Dixon and Wilson both observed Plaintiff leave 2622 and enter the church parking lot, where he waited for a period of time before exiting the church and proceeding to the interstate. Defendants followed him, and eventually searched his vehicle. (Transcript, DE 163, pp. 76 ¶¶ 6-25, 77 ¶¶ 1- 8, 131, 128 ¶¶ 3-6, 143-44.)

The undersigned notes here that Defendants both testified that they observed a white van enter the parking lot and pull up to Plaintiff's vehicle such that the drivers' windows were adjacent to each other. Further, Defendants both claim that they witnessed the driver of the white van hand Plaintiff an envelope that they believed to be a "package" of illegal gambling tickets and money. (Transcript, DE 163, pp. 77 ¶¶ 20-24, 127 ¶¶ 13-25, 128 ¶¶ 1-2.) However, this fact is contested and Defendants offer nothing more than their sworn testimony as proof. Nevertheless, Defendants had probable cause to search Plaintiff's vehicle even without seeing a direct transfer between the white van and Plaintiff.

## C. Probable Cause Determination

The facts here clearly provide a reasonable suspicion of criminal activity. Defendants knew that 2622 Jefferson Street was a collection point for illegal gambling activity, Defendants knew Plaintiff is a numbers runner, and observed him arrive at and enter 2622 at a time consistent with such activity. Defendants clearly "possessed specific objective information regarding [illegal gambling] activities, the roles of the [the organization's] various players, and the typical use of [2622 Jefferson Avenue] in the furtherance" of illegal gambling activities in the Metro Nashville area to support an investigatory stop. *Lyons*, 687 F.3d at 765. Further, under the totality of circumstances, the events they witnessed while surveilling 2622 on that night properly supplement their reasonable suspicions to warrant a search of Plaintiff's vehicle.

Defendants observed that Plaintiff wore a "bulky . . . kind of heavy jacket" on a night when the ambient temperature was near 80 degrees. (Transcript, DE 163, p. 22 ¶¶ 16-17.) Defendants also observed Plaintiff pull into a church parking lot after leaving the gambling establishment and wait there for a period of time before proceeding to the interstate. By Plaintiff's own admission, this was conduct that he engaged in *when carrying contraband*— illegal gambling tickets and the proceeds derived therefrom—on a routine basis, and, according to Dixon's testimony, was the type "counter surveillance technique" that Defendants were familiar with in most numbers runners when they were carrying the proceeds of illegal gambling activities. (Transcript, DE 163, p. 124 ¶¶ 20-24.) These observations, coupled with their knowledge of Plaintiff's occupation and the use of 2622 Jefferson Street, provide an objective basis to conclude that there was a "fair probability that contraband or evidence of a crime w[ould] be found in" Plaintiff's vehicle upon searching it. *United States v. Haynes*, 301 F.3d 669, 678 (6th Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

## III. CONCLUSION

The Magistrate Judge finds that probable cause existed to search Plaintiff's vehicle on August 7, 2010, regardless of any plain view evidence. Defendants possessed knowledge of Plaintiff's occupation as a numbers runner and 2622 Jefferson Street's use as a collection point for illegal gambling activities, and they observed Plaintiff engage in conduct providing a reasonable basis to conclude that a search of his automobile would yield evidence of criminal activity. Thus, the Magistrate Judge concludes there was no violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

## IV. RECOMMENDATION

For the reasons stated above, the undersigned recommends that the defendants' motion for Summary Judgment be **GRANTED** and that Plaintiff's claims be **DISMISSED** with prejudice.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 19th day of February, 2014.

/s/Joe B. Brown  
Joe B. Brown  
Magistrate Judge